**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Robert Trapp,                 )
                              )
          Plaintiff,     ) Case No. 1:09-CV-763
                              )
    vs.                    )
                              )
TSS Technologies, Inc.,    )
                              )
                              )
          Defendant.     )

O R D E R

     This matter is before the Court on Defendant TSS Technologies, Inc.'s motion for summary judgment (Doc. No. 15). For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED.**

I. Background

     Plaintiff Robert Trapp was 60 years old when he was terminated by Defendant TSS Technologies, Inc. ("TSS") from his position as a buyer/planner in April 2009.  TSS states that Plaintiff was selected for termination in a reduction-in-force ("RIF") because two other substantially younger buyer/planners had more experience and were more proficient in using advanced purchasing software than Plaintiff.  Plaintiff claims that there was no reduction-in-force and that he was terminated because of his age.  Because on this record no reasonable juror could conclude that Plaintiff was terminated because of his age, TSS's motion for summary judgment will be granted.

As the Court understands the record, TSS is a manufacturing company with several distinct lines of business. As is relevant here, however, TSS had the Systems Integration and Engineering ("SIE") division and the Medical division.  Phillips Dep. (Doc. No. 11), at 11, 17-18.  The SIE division designs and builds custom-made, essentially one-of-a-kind items.  Phillips Aff. (Doc. No. 25-2) ¶ 6.   The Medical division builds ongoing lines of products.  Id.  For instance, the Medical division manufactured sliding beds or gantries for Siemens Medical Systems for the Symbia CT scanner.  Phillips Dep. at 67-68.

TSS has "buyer" positions and "buyer/planner" positions.  A buyer is responsible for purchasing all of the parts necessary to manufacture a given item.  A buyer/planner, on the other hand, is responsible not only for purchasing all of the parts needed to manufacture the item but also for planning and managing the inventory of parts for that item so that the parts are on hand when needed.  Phillips Dep. at 17-18; Phillips Aff. (Doc. No. 25-2) ¶ 9.  Because the SIE division builds only discrete, custom-made items, it only utilizes buyers because only a one-time purchase of the necessary parts is needed.  Phillips Dep. at 17-18; Phillips Aff. (Doc. No. 25-2) ¶ 6.  In other words, there is no need in the SIE division to manage an inventory.  Because the Medical division manufactures a line or series of items, it utilizes buyer/planners because there is an

2

inventory of parts that needs to be managed. Phillips Dep. at 17-18; Phillips Aff. (Doc. No. 25-2) ¶ 9. Plaintiff was a buyer/planner in the Medical division. Plaintiff's principal responsibilities in this position were purchasing for the GE Healthcare Overhead Transport System, GE pumps and cylinders, and the Siemens Preclincal cell, which built small gantries for test animals. Phillips Dep. at 66-67; Plaint. Dep. (Doc. No. 13) at 41-42.

Plaintiff reported to Dean Phillips, who was the purchasing manager for TSS for both the SIE division and the Medical division at the relevant times in this case. Phillips Dep. at 11-12. At one time, Phillips managed a total of eight buyers and buyer/planners in this position. Id. at 12-13.

Beginning in about 2008, TSS experienced significant declines in sales and, while Plaintiff disputes that he was terminated in a RIF, the record does reflect a more or less ongoing process of staff reductions through and beyond the date of Plaintiff's termination. Phillips Aff. (Doc. No. 15-2) ¶ 39; Doc. No. 11-1 (TSS report for period January 1, 2009 to July 13, 2010 showing 111 involuntary separations through layoffs and terminations). Despite the overall downturn in sales, TSS picked up the Siemens Symbia business, which was a multi-million dollar account, in early 2009. Phillips Aff. (Doc. No. 15-2) ¶ 27. Siemens required, however, that TSS assign two buyer/planners to

3

the Symbia account. Id. ¶ 29; Phillips Aff. (Doc. No. 25-2) ¶ 8; Phillips Dep. 69-71; Maguire Dep. (Doc. No. 20) at 38-40. In order to fulfill this requirement, in February 2009, Phillips hired Andrew Wood and Robert Reid. Wood was 44 years old at the time and Reid was 41 years old. Phillips stated that he hired Wood and Reid for the Symbia account because of their previous experience as purchasers for businesses more sophisticated than TSS and because of their familiarity with advanced enterprise resource planning ("ERP") software. Phillips Aff. ¶¶ 31-36.

In the midst of this activity, TSS was also planning to transition to a new ERP system called Dynamics X. Phillips stated that Dynamics X was an advanced and sophisticated Windows-based system that focuses on materials requirements planning ("MRP"). Phillips Aff. ¶¶ 18-21. In order to properly utilize Dynamics X, the buyer must be proficient in using Windows Excel. Id. ¶ 22-23. TSS's old ERP software was called Visibility and was a DOS-based system with limited functionality and flexibility. Id. ¶¶ 15-16, 24. The decision to switch to Dynamics X occurred in late 2008 or early 2009, but TSS did not go "live" with the system until 2010. Id. ¶¶ 25-26. All of the buyers, including Wood and Reid, received mandatory training on Dynamics X at the end of 2009. Phillips Dep. 78-79, 104-05.

Phillips testified that in April 2009, he received a directive from his manager, John McGuire, to reduce his staff by two persons. Phillips selected Plaintiff and Kevin Tate, who was in the SIE division, for termination. Phillips testified and stated in his affidavit that he chose to retain Wood and Reid, rather than Plaintiff, because of their greater experience with advanced ERP systems and because of their experience purchasing for sophisticated organizations. In other words, Phillips wanted to retain Wood and Reid for essentially the same reasons he hired them. Phillips also testified that he wanted to keep Reid because he did not want to alarm Siemens by making significant changes in their purchasing team. Phillips. Dep. at 101-03; Phillips Aff. (Doc. No. 15-2) ¶¶ 42-51. On the other hand, Phillips stated that he believed that Plaintiff's skills with ERP systems was weaker and, he noted, all of Plaintiff's purchasing experience was with TSS. Phillips Aff. ¶¶ 52-55. Thus, Phillips stated that he felt that Wood and Reid were best suited to fulfill the purchasing role for TSS going forward. Id. ¶ 52. Accordingly, Phillips elected to terminate Plaintiff.

For his part, Plaintiff conceded that he was never subjected to derogatory remarks about his age by anyone at TSS. Plaint. Dep. at 25-26. Plaintiff did testify that Phillips stated that another buyer, Kris Rowland, was "old and inflexible" after she was terminated in staff reduction that occurred a

5

couple of months before his termination.  Rowland was age 65 at the time.  Phillips denied that he made this statement about Rowland and stated that he terminated Rowland from her position purchasing for the SIE division because her technical skills, such as blueprint reading, and capabilities using the ERP system were not as strong as the buyers who were retained.  Phillips Aff. (Doc. No. 25-1) ¶ 5.

Plaintiff admitted in his deposition that he had no specific basis for believing that Phillips discriminated against him because of his age other than he felt that he could perform the purchasing duties as well as Wood and Reid.  Plaint. Dep. 81-82; 85-86.  Plaintiff further admitted that he could not say that his education, purchasing experience, and experience with ERP systems was superior to Wood and Reid's.  Id. at 78-79. Finally, Plaintiff testified that it was his understanding that Wood and Reid were hired specifically to handle the Siemens Symbia account.  Id. at 74-75.

TSS has a layoff policy which states that employees will be selected for layoff based on transferability of skills within the company, demonstrated performance, attendance, and "the needs of the company and specific projects."  Doc. No. 11-1, at 32.  Phillips admitted that he did not receive any guidance from TSS on how to conduct this layoff and he apparently did not consult the layoff policy when he decided to terminate Plaintiff.

6

Phillips Dep. at 33-34; 58. Phillips did state, however, that he made his decision based on "how many people am I going to have remaining and how can I best position my department to handle the workload for the company." Id. at 33. He also stated that he felt that his decision to terminate Plaintiff was in accord with TSS's layoff policy. Id. at 60.

Plaintiff filed a timely complaint of discrimination with the EEOC. The EEOC did not act on Plaintiff's complaint within 60 days, therefore, he was entitled to file suit for age discrimination in federal court. Complaint ¶¶ 5-6; 29 U.S.C. § 626(d)(1). Plaintiff's complaint alleges that he was terminated because of his age in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Ohio Civil Rights Act, Ohio Rev. Code § 4112, et seq.

Following discovery, TSS filed the instant motion for summary judgment which is now ready for disposition.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party,

7

who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties'

8

differing versions of the truth at trial." <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

9

for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

III. Analysis

Plaintiff's age discrimination claims arise under the federal ADEA and the Ohio Civil Rights Act.  Since these statutes employ the same evidentiary standards, the claims may be analyzed together.  Peters v. Lincoln Elec. Co., 285 F.3d 456, 469 (6th Cir. 2002).  In order to withstand a motion for summary judgment, an age discrimination plaintiff must adduce sufficient evidence for a reasonable juror to conclude that but for his age he would not have been terminated.  Gross v. FBL Financial Serv., Inc., 129 S. Ct. 2343, 2351 (2009).  Finally, it is not disputed

10

between the parties that there is no direct evidence of age discrimination, such as discriminatory or derogatory remarks about Plaintiff's age, and that, therefore, the case should be analyzed under the McDonnell Douglas format for circumstantial claims of discrimination.

In its motion for summary judgment, TSS argues that Plaintiff was terminated in a RIF and that he cannot meet his heightened burden to establish a prima facie case of age discrimination in reduction-in-force cases. In any event, TSS argues that it is entitled to summary judgment because Plaintiff cannot rebut its legitimate, non-discriminatory reason for terminating him, namely that Plaintiff's skills with advanced ERP software were inferior to Wood and Reid's skills and that he lacked their experience purchasing for sophisticated businesses. Plaintiff, on the hand, argues that he was not terminated in a RIF and that, therefore, he does not have to satisfy a heightened burden to establish a prima facie case of discrimination. Plaintiff further contends that he has sufficient evidence of pretext to overcome TSS's motion for summary judgment.

A plaintiff establishes a prima facie case of age discrimination circumstantially by showing: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the job lost or not gained; and 4) that a person substantially younger than the plaintiff replaced or was

selected over him, or that the position remained open while the employer sought other applicants. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994). A plaintiff may also satisfy the fourth element by showing that the defendant treated similarly-situated non-protected persons more favorably than the plaintiff. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

Reduction-in-force cases are somewhat different, however:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). In the RIF context, establishing the McDonnell Douglas elements alone does not give rise to an inference of discrimination. Id. Therefore, the plaintiff must produce additional direct, circumstantial, or statistical evidence which indicates that the employer terminated the plaintiff for impermissible reasons. Id.

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual. Id. However, the burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken. Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997). When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. Id. In the second situation, the factual basis for the discharge is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

The record seems pretty clear that Plaintiff was terminated pursuant to a RIF. It is not disputed that Phillips

13

received a directive from Maguire, his boss, to reduce his staff
by two persons.  Moreover, it is not disputed that throughout
this time frame, TSS was in a more or less constant process of
staff reductions.  Additionally, while Plaintiff disputes this
point, the record establishes that his purchasing duties were
distributed among other buyers to be performed in addition to
their already-existing purchasing duties.  According to
Phillips's second affidavit, Plaintiff's Siemens Preclincal
account went to Ervin Frye, Phillips Aff. (Doc. No. 25-1 ¶ 2),
whereas it appears that Plaintiff's duties for the GE Medical
account went to Wood.  Phillips Dep. at 87-88.  Therefore, the
record would support a finding that Plaintiff was terminated in a
reduction-in-force and that he would as a consequence be
subjected to a heightened burden of production at the prima facie
case stage.  The Court will assume, however, that Plaintiff can
establish a prima facie case of age discrimination because his
claims fail at the pretext stage in any event.

Plaintiff contends that his asserted inferior
qualifications is a pretext because the RIF was not carried out
pursuant to an objective plan.  Plaintiff argues that a
reasonable juror could find that age was the reason for his
termination because there was no blueprint for the layoffs and
that the layoffs were instituted largely at Maguire's whim.  He
also notes the absence of guidance that Maguire gave to his

managers in executing the RIF.  Finally, Plaintiff notes that
hiring Wood and Reid two months before terminating him is
inconsistent with the notion that staff reductions were
necessary.  Plaintiff relies principally on Blair v. Henry
Filters, Inc., 505 F.3d 517 (6th Cir. 2007), in support of this
argument.

It is true, as Plaintiff argues in his brief, that in
Blair, the Court held that a juror could find the employer's
reason for terminating the plaintiff was pretextual because there
was "no blueprint for the reduction," but rather "the shedding of
employees appears to have been chaotic, occurring in fits and
starts." Id. at 533.  In Blair, however, the plaintiff adduced
additional evidence of pretext that is absent from this record.
Specifically, the plaintiff presented evidence that his
supervisor repeatedly mocked his age, removed him from a
lucrative account because of his age, and told other employees
that he wanted to develop a younger sales force.  Id.  Thus, it
was not the absence of a blueprint alone which led the Blair
Court to find pretext.  Rather, it was the "lack of an objective
plan, coupled with Blair's circumstantial evidence of age
discrimination [which] would permit a reasonable fact-finder to
conclude that Henry Filters's proffered non-discriminatory reason
for terminating Blair was a pretext for discrimination." Id. at
534 (emphasis added).  As will be illustrated, the additional

15

circumstantial evidence of discrimination that was present in
<u>Blair</u> is missing in this case such that the alleged lack of an
objective plan to carry out the RIF is insufficient to support an
inference that Plaintiff was terminated because of his age.

In any event, the record in this case does not support
a reasonable conclusion or inference that TSS was laying off
employees in a whimsical or chaotic fashion. The <u>Blair</u> Court did
not set forth the facts that led it to conclude that the layoffs
were "chaotic" and occurred in "fits and starts." This record,
however, does not reflect a chaotic reduction process. In fact,
the record shows that TSS eliminated employees every month but
one for a 19 month period. Doc. No. 11-1, at 101-03. Moreover,
while TSS's layoff plan may have been somewhat informal, it
nevertheless was a plan based on circumstances and not prompted
by some capricious or whimsical impulse. Maguire testified that
Plaintiff's layoff was necessitated by a sudden drop in TSS's
medical business in March 2009. Maguire met with his two senior
business unit managers over a several day period, they reviewed
sales forecasts and the manpower they would need to meet the
anticipated workload, and then made judgments about how many
positions would have to be eliminated. Maguire Dep. at 18-30.
This is an eminently rationale methodology for conducting a
layoff. Phillips made his decision to terminate Plaintiff and
keep Wood and Reid based on who he felt would best fulfill the

16

purchasing requirements of his department.  Although neither
Maguire nor Phillips consulted TSS's layoff procedure, Phillips
was generally correct that he complied with that procedure
because he made his decision based on "the needs of the company
and specific projects."  Doc. No. 11-1, at 32.

          Nor under the circumstances of this case is it evidence
of pretext that TSS hired Wood and Reed as buyer/planners in the
midst of an overall reduction-in-force and then decided to
terminated Plaintiff from his buyer/planner position two months
later.  It is not disputed in this case that Siemens Symbia was a
new line of business that TSS obtained in the midst of an overall
downturn in sales and that TSS hired Wood and Reid specifically
to handle that account.  Thus, it was a rational decision to
retain these two employees to continue to service this new
account.  TSS was not required to reassign Plaintiff to the
Siemens Symbia project instead of terminating him.  Godfredson v.
Hess & Clark, Inc., 173 F.3d 365, 374 (6th Cir. 1999)("This court
. . . has held that an employer has no duty to transfer an
employee to another position within the company when the employer
reduces the work force for economic reasons."); Barnes v. GenCorp
Inc., 896 F.2d 1457, 1469-70 (6th Cir. 1990) ("This Circuit has
clearly established that an employer has no duty under ADEA to
permit an employee to transfer to another position or to displace

17

workers with less seniority when the employee's position is eliminated as part of a work force reduction.").

Plaintiff also argues that pretext can be demonstrated because TSS has given shifting reasons for terminating him. Plaintiff notes that in its response to his EEOC charge TSS stated that he was terminated for performance reasons with only a passing reference to his qualifications, whereas in deposition testimony TSS emphasized that Wood and Reid's ERP skills were superior to his. Doc. No. 22, at 32-33. Plaintiff also points out as an inconsistency that Maguire testified TSS had put a new ERP system in place and that Phillips retained Wood and Reid because of their prior experience with ERP systems, but that TSS's new system did not go live until after his termination. While an employer's changing rationale for an adverse decision can be evidence of pretext, <u>Cicero v. Borg-Warner Automotive, Inc.</u>, 280 F.3d 579, 591 (6th Cir. 2002), TSS's reasons for terminating Plaintiff and retaining Wood and Reid have been consistent. TSS's response to the EEOC did highlight in some detail some of Plaintiff's past performance issues but it also stated that "[t]he buyers who were not selected for termination were more highly qualified[.]" Doc. No. 22-3, at 1. Phillips testified that he retained Wood and Reid because of their prior experience with advanced ERP systems and purchasing for sophisticated businesses. Maguire's testimony was essentially

18

the same as Phillips's and the fact that TSS's new ERP system was not specifically in place at the time of Plaintiff's termination is basically inconsequential since it is undisputed that TSS was in the process of implementing the new system then.

Plaintiff finally claims that a reasonable juror could find that there was no basis in fact for Phillips to conclude that Wood and Reid were more highly qualified than him. Plaintiff points out that Wood and Reid's involvement with the Siemens Symbia account likely would not have been extensive by the time of his termination. He also argues that his most recent evaluation indicated that he understands the medical business flow in order to accomplish tasks efficiently whereas Wood and Reid had no prior experience purchasing for medical equipment. Plaintiff again tries to cast doubt on the assertion that Wood and Reid's knowledge of ERP systems was greater than his because TSS's new system did not go live until after his termination and Wood and Reid also did not have experience using the system that TSS was installing.

These arguments, however, fail to create any triable issue on pretext because Plaintiff is picking points of comparison that are essentially irrelevant because they are not criteria Phillips emphasized in his termination decision. Plaintiff cannot demonstrate pretext by relying on his subjective evaluation of his own qualifications.  Schoonmaker v. Spartan

19

Graphics Leasing, LLC, 595 F.3d 261, 269 (6th Cir. 2010).
Phillips's determination that it was important to maintain
continuity on the Symbia account is not so irrational that it
gives rise to an inference of pretext.  Bender v. Hecht's Dept.
Stores, 455 F.3d 612, 627 (6th Cir. 2006) (noting that the court
should not second guess the employer's business judgment unless
it was "ridden with error").  Phillips retained Wood and Reid
because of their prior experience purchasing for sophisticated
businesses and their prior experience with advanced ERP systems.
Plaintiff has not adduced any evidence that his qualifications
were equal to or superior to their qualifications in these two
areas which Phillips deemed important to his decision.  Indeed,
Plaintiff admitted in his deposition that his skills and
experience were not superior to Wood and Reid's.  It is not
disputed that all of Plaintiff's purchasing experience was
acquired with TSS, which Phillips described as unsophisticated
compared to the companies Wood and Reid had worked for, and that
all of Plaintiff's experience with ERP systems was on TSS's
antiquated Visibility software whereas Wood and Reid had prior
experience with advanced ERP systems.  In fact, Reid testified
that he participated in setting up ERP systems for two of his
previous employers. Reid. Dep. at 22-23.

        This case is nearly indistinguishable from Schoonmaker
v. Spartan Graphics Leasing, LLC, 595 F.3d 261 (6th Cir. 2010).

In Schoonmaker, the company experienced a slowdown in its business and decided that a reduction in force was necessary. During a weekly production meeting, the managers and business owners decided that they needed to reduce costs.  Each manager evaluated his department for savings.  "The decision to cut costs was a 'general consensus . . . nothing official." Id. at 263. The plaintiff's manager decided to eliminate her position based on his perception that she did not get along as well with the other employees and that she was not as productive as the employee he retained.  The manager, however, did not have records to support that conclusion and he did not consult the company's written policy concerning staff reductions.  Id. at 263-64.

        The Court concluded, however, that the plaintiff failed to show that the employer's reason for terminating her was a pretext for age discrimination.  The plaintiff failed to adduce any evidence that her qualifications were superior to the employees the employer decided to retain.  Id. at 268-69.  The Court rejected the plaintiff's contention that the employer had given inconsistent reasons for terminating her, noting that her supervisor consistently stated that her productivity was a factor in his decision.  Id. at 269.  The Court also appears to have rejected as not relevant the plaintiff's contention that the employer gave a different reason for her termination in its response to her EEOC complaint.  Id. at 269 n.1.  Moreover, the

21

Court appeared not to have been troubled that the supervisor did not consult the employer's layoff policy and that his assessment of the plaintiff's qualifications was subjective. Id. at 269-70. The Court stated that the plaintiff's supervisor was entitled to value the retained employee's ability to get along with the other workers in his department as a factor in deciding who should be terminated. Id. The Court held that this reason was sufficient to motivate its decision to terminate the plaintiff. Id. at 270.

In this case, like the employer in Schoonmaker, TSS used a somewhat informal process for implementing the RIF and neither Maguire nor Phillips consulted the layoff policy in deciding to terminate Plaintiff. Also like the employer in Schoonmaker, TSS gave additional reasons for Plaintiff's termination to the EEOC but nevertheless has consistently maintained that Wood and Reid's qualifications were superior to Plaintiff's. Finally, like the supervisor in Schoonmaker, Phillips had to determine the best way for his department to function going forward and decided to value Wood and Reid's prior experience with sophisticated businesses and advanced ERP systems over Plaintiff's long-term but relatively cloistered experience purchasing for TSS. Phillips was entitled to make that judgment and the record does not support an inference that this was an insufficient basis to motivate his decision. This record does

not support an inference that Plaintiff was terminated because of his age.

Conclusion

In conclusion, for the reasons stated, Defendant's motion for summary judgment is well-taken and is **GRANTED. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date January 3, 2011                    s/Sandra S. Beckwith
                                        Sandra S. Beckwith
                             Senior United States District Judge